**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IESHA MAZE, individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PHARMACENTRA, LLC,<br><br>　　　　Defendant. | CIVIL ACTION<br>NO. 1:24-cv-04557-TRJ |

## JOINT MOTION FOR SETTLEMENT APPROVAL

Plaintiffs Iesha Maze, Chrissy Ambos, Tiffany Burt, Candace Hunter, Kenya Jones, and Alecia Pinckney and Defendant PharmaCentra, LLC (collectively, the "Parties") submit this joint motion seeking Court approval of their settlement of Plaintiffs' wage and hour claims against Defendants. The Parties further seek dismissal of this action with prejudice. In support of this Motion, the Parties jointly state as follows.

## I.    Background

On October 8, 2024, Plaintiff Iesha Maze filed this action to recover unpaid wages. (ECF 1.) Specifically, the Complaint alleges that Defendant did not compensate Plaintiff for the time spent starting up her computer and logging into software programs at the beginning of the workday, for the time spent logging back into her computer after a meal break, or for the time spent turning off or restarting

1

her computer at the end of the workday. (*Id.* ¶¶ 7-10.) Maze asserted claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, as well as under state law breach of contract and unjust enrichment theories.[1] (*See generally* ECF 1.) She brought her FLSA claim as a putative collective action and her state-law claims as putative Rule 23 class claims. (*Id.*)

On December 20, 2024, PharmaCentra filed an Answer in which it denied that it violated any law and averred that its employees were always paid properly. (ECF 12.) PharmaCentra then filed a motion to compel arbitration, arguing that Maze had signed an arbitration agreement with a class and collective action waiver which compelled Maze to arbitrate her claims against PharmaCentra on an individual basis. (ECF 14.) While Defendants' motion to compel arbitration was pending, Chrissy Ambos, Tiffany Burt, Candace Hunter, Kenya Jones, and Alecia Pinckney filed consent to join forms and opted-in to this litigation as party-plaintiffs. (ECF 15.)

After these additional Plaintiffs opted-in, PharmaCentra produced limited voluntary discovery to establish the existence of arbitration agreements for the new opt-in Plaintiffs. The Parties then met and conferred about the validity and scope of the arbitration agreements to attempt to resolve the disputes raised in the pending Motion to Compel. Having completed those discussions, the Parties agreed that the

---

[1] The breach of contract and unjust enrichment claims seek the same wages as the FLSA claim and are pled in the alternative.

arbitration agreements signed by Maze and the five opt-in Plaintiffs are valid and enforceable and that, as a result, their claims should proceed in arbitration on an individual basis. (ECF 20.) As a result, the Parties requested that the Court stay and administratively close this proceeding. (*Id.*) The Court granted the Parties' request and indicated that, if necessary, the Parties may file a motion to reopen this action or vacate this order of dismissal by August 21, 2025. (ECF 21.)

After the Court stayed and administrative closed this case, the Parties decided to explore whether they could resolve this matter before proceeding with the six individual arbitrations. To achieve this, they exchanged informal discovery relevant to Plaintiffs' claims and Defendant's defenses. This discovery consisted of spreadsheets detailing time records and payroll data for the three years preceding the filing of this action, including each Plaintiff's daily punch times and payments received. After Plaintiffs used this information to assess the potential value of their claims, the Parties engaged in settlement negotiations. Ultimately, the Parties reached a settlement, memorialized in the six fully executed Settlement Agreement and Release forms (the "Agreements") attached hereto as **Exhibit 1**.[2] As shown below, under the terms of the settlement Plaintiffs are receiving 34% of their best-

---

[2] While the Agreements are a compromise of disputed claims, they do not constitute an admission by PharmaCentra of the violation of any federal, state, or local statute or regulation. PharmaCentra expressly denies having engaged in any wrongdoing or unlawful conduct in this lawsuit.

day-in-court damages. To be clear, this 34% does not include Plaintiffs' attorneys' fees, which PharmaCentra is paying in addition to the amounts below.

| Plaintiff | Best-case Damages | Settlement Amount |
|---|---|---|
| Maze | $423.15 | $142.18 |
| Ambos | $2,330.94 | $783.20 |
| Burt | $85.62 | $28.77 |
| Hunter | $854.68 | $287.17 |
| Jones | $1,955.32 | $656.99 |
| Pinckney | $2,361.08 | $793.32 |

Pursuant to this motion, the Parties seek approval of their Settlement Agreement from the Court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982). The Parties further request an Order from the Court dismissing the above-styled action with prejudice.

## II.    Argument and Citation to Authorities

## A.    The FLSA permits the settlement and release of claims with court approval, and there is a "strong presumption" in favor of approval.

There are two ways that FLSA claims may be settled, compromised, or released. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id*. The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by
> employees under the FLSA for back wages because initiation of the

4

action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

When determining whether to approve an FLSA settlement, a court analyzes the settlement in two steps. "First, a court determines whether the settlement resolves a bona fide dispute over an FLSA claim and ensures that the parties are not, via settlement of the plaintiff's claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Washington v. Int'l Follies, Inc.*, 2022 WL 22867398, at *1 (N.D. Ga. June 6, 2022) (citing *Lynn's Food Stores*, 679 F. 2d at 1355). If the court determines that the settlement does resolve a bona fide FLSA dispute, it must then determine whether the proffered settlement is "a fair and reasonable resolution" of that dispute. *Id.*

When reviewing the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011); *see also Parker v. Chuck Stevens Chevrolet*

*of Atmore, Inc.,* 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) ("In reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair."). Moreover, a Court need only determine whether a proposed settlement "is a fair and reasonable resolution of a bona fide dispute *over FLSA provisions*." *Lynn's Food Stores*, 679 F.2d at 1355 (emphasis added). "[T]he release of non-FLSA claims is generally not subject to judicial scrutiny."[3] *Bell v. James C. Hall, Inc.*, 2016 WL 5146318, at *1 n.1 (M.D. Fla. Sept. 21, 2016) (quoting *Shearer v. Estep Const., Inc.*, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).

The settlement of the instant action involves such a situation in which the Court should approve the Parties' settlement agreements to resolve and release Plaintiffs' FLSA claims against Defendant. The proposed settlement arises out of an action brought by the Plaintiffs against their former employer, which was adversarial in nature. During the litigation and settlement of this action, Plaintiffs were represented by experienced counsel.

**B.    The settlement resolves a *bona fide* dispute.**

PharmaCentra provides customizable marketing and communications programs for pharmaceutical and insurance providers to communicate more

---

[3] Because Plaintiffs brought additional state-law claims, pled alternatively to their FLSA claims, their settlement and release is not limited to their FLSA claims.

effectively with patients and healthcare providers. As part of its business, PharmaCentra employs Remote Customer Service Representatives who answer phone calls and respond to and assist customers of PharmaCentra's clients. This includes connecting individuals with pharmacies that currently stock their medication, recruiting individuals for clinical trials, engaging in telesales, and attending to other pharmaceutical- and insurance-related needs.

Plaintiffs contend that PharmaCentra's policies and procedures forced them to perform their preliminary or postliminary work activities off-the-clock, and without compensation. Plaintiffs allege that they would perform up to 15 minutes of work per shift that was both uncounted and unpaid. PharmaCentra, on the other hand, strongly contests that any off-the-clock work was performed by Plaintiffs and also disputes that the time Plaintiffs spent booting up or shutting down their computers is compensable under the FLSA or the Portal-to-Portal Act. PharmaCentra further contends that, even if this computer startup and shut down time was compensable was performed off-the-clock, it neither knew nor could have known that Plaintiffs were spending minutes a day on these tasks because Plaintiffs all worked remotely from their homes across the country and, as a result, were not subject to any sort of physical supervision. As a result, PharmaCentra contends that it had to rely on its lawful timekeeping policies and the hours that Plaintiffs reported.

In addition to their disputes regarding liability, the Parties have opposing views on other damages components such as: (i) how to properly calculate damages; (ii) whether liquidated damages are available; and (iii) whether a two-year or three-year limitations period applies given that the latter requires a showing of "willfulness." Because the Parties contest liability and the appropriate amount of wages owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

## C.    The settlement is fair and reasonable.

In determining whether an FLSA settlement is a fair and reasonable resolution, courts in the Eleventh Circuit look to (i) the existence of fraud or collusion behind the settlement; (ii) the complexity, expense, and likely duration of the litigation; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the probability of plaintiff's success on the merits; (v) the range of possible recovery; and (vi) the opinions of the counsel. *See, e.g.*, *Washington*, 2022 WL 22867398, at *1–2; *Martinez v. Excel Hosp., LLC*, 2017 WL 9940234, at *2 (N.D. Ga. Jan. 27, 2017); *Williams v. Hematology & Oncology Consultants, P.A.*, 2014 WL 5307460, at *2 (M.D. Fla. Oct. 16, 2014). Here, all these factors weigh in favor of approving the settlement.

### 1.    The agreement was fairly and honestly negotiated.

First, although this case was brought as a class and collective action, no class or collective was certified so this is not a representative settlement. It is, instead, six individual settlements with six individual Plaintiffs. This is important because no named plaintiff or class representative made decisions on behalf of absent class members or opt-in plaintiffs. Instead, each Plaintiff has reviewed the settlement terms and amounts with their counsel and agreed to them. This alone is evidence that the settlement was fairly and honestly negotiated, and that no collusion has occurred. In fact, for these reasons, some courts in this Circuit have approved individual FLSA settlements "without special analysis where plaintiffs had consented to join but the Court had not yet granted conditional certification." *E.g.*, *Serino v. Enhanced Recovery Co., LLC*, 2017 WL 11048878, at *3 (M.D. Fla. Feb. 9, 2017) *(citing Murphy v. Enhanced Recovery Co., LLC*, 2014 WL 6871583, at *3 (M.D. Fla. Dec. 3, 2014)).

Second, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA matters. Prior to their good faith, arms-length settlement negotiations, the  Parties exchanged substantial time and pay data for all Plaintiffs which encompassed the FLSA's three-year statute of limitations period.[4] Plaintiffs'

---

[4] The FLSA's standard statute of limitations is two years, but that can be extended to three years if a plaintiff can establish that a defendant's violation of the FLSA was willful.

counsel used the data provided by Defendant to calculate their best-case scenario damages assuming the allegations in the Complaint as true. These calculations took into account the number of workweeks each Plaintiff worked during the FLSA's statutory period, the hours worked by Plaintiffs, Plaintiffs' hourly rates and overtime rates, the amount Plaintiffs alleged they worked off the clock, and other relevant factors. The  Parties then went through numerous offer and demand cycles over a six-week period. These negotiations by experienced wage-and-hour counsel demonstrate the settlement was fairly and honestly negotiated and, conversely, that no fraud or collusion occurred. *See Lynn's Food Stores*, 679 F.2d at 1354 (noting that a settlement reached in the "adversarial context" where the plaintiff is represented by counsel is more likely to be fair and reasonable).

### 2. The procedural status, likely duration, and expense of the case as well as the amount of information exchanged show that the settlement is reasonable.

As described above, after filing its answer PharmaCentra sought to enforce its arbitration agreements. After meeting, conferring, and exchanging copies of the Plaintiffs' arbitration agreements, the Parties agree that the arbitration agreements signed by Maze and the five other Plaintiffs were valid and enforceable and that their claims should proceed in arbitration. Moreover, because the arbitration agreements all contain a class and collective action waiver, these arbitrations would have occurred on an individual basis—and not on a collective or representative basis.

Because of this, if the Parties had continued to litigate, they would have proceeded with six individual arbitrations. Preliminarily, restarting this litigation six-times-over in arbitration may have only further delayed any potential recovery by Plaintiffs. And proceeding individually would have placed several additional burdens on Plaintiffs. For example, in a collective action, courts often place limitations on discovery, such as allowing limited the amount of interrogatories or document requests the defendant can serve on an opt-in, or only allowing written discovery to be served on a sample of opt-ins. Courts may also shorten the time limits for opt-in depositions (e.g., 3 or 4 hours) or only permit a defendant to depose a sample of the opt-in plaintiffs. But when claims proceed individually, as they would have here, each Plaintiff would be subject to the full scope of discovery permitted by the Federal Rules. Conversely, PharmaCentra would be subject to duplicative discovery (i.e., written discovery and deposition noticed from each Plaintiff), and under the terms of the arbitration agreement would incur all costs unique to arbitration including arbitration fees and expenses. Because of the modest amounts of time Plaintiffs claim to have worked off the clock, PharmaCentra's arbitration expenses would have eclipsed Plaintiffs' potential recovery many times over.

Given this, the Parties decided to engage in informal discovery and explore settlement before diving into protractive, duplicative, and costly litigation.

PharmaCentra, in full transparency, provided all the time and pay data that Plaintiffs would have been entitled to through formal discovery. And Plaintiffs utilized this data to calculate their best-case scenario damages assuming the allegations in the Complaint as true. In light of this informal discovery, as well as the considerable time, efforts, and costs the Parties would have expended individually litigating six cases, the Parties submit that factors two and three also weigh in favor of finding that the settlement was fair and reasonable.

### 3.    The ultimate outcome of the litigation was (and is) unknown.

Questions of law and fact exist as to whether PharmaCentra is liable to Plaintiffs and, if so, in what amounts. First, Defendants dispute that the time Plaintiffs spent booting up or shutting down their computers is even compensable work. The Parties also dispute the number of hours Plaintiffs worked off-the-clock, if any, and whether PharmaCentra was on notice that these employees—who worked remotely out of their homes and were free from physical supervision—were engaged in compensable activities during this computer startup process.

PharmaCentra contends that even if Plaintiffs' computer startup and shut down time was compensable and was performed off-the-clock, it neither knew nor could have known that Plaintiffs were spending minutes a day on these tasks because Plaintiffs all worked remotely from their homes across the country and, as a result, were not subject to any sort of physical supervision. As a result, PharmaCentra

argues that it is entitled to to rely on its lawful timekeeping policies and the hours that Plaintiffs reported. Plaintiffs contend that this time is compensable under the FLSA and that PharmaCentra was on notice of their pre- and post-shift activities.

In addition to the Parties' disagreement on liability, they also disagree on the relevant statutory period and how to calculate damages. These issues greatly impact the amounts that Plaintiffs could recover and, in some instances, would prevent any recovery at all. Under § 255 of the FLSA, any cause of action "shall be forever barred unless commenced within two years after the cause of action accrued." 29 U.S.C. § 255. That statute of limitations, however, may be extended to three years if the violation is found to be "willful." To secure a three-year statute of limitations, however, Plaintiffs must prove that PharmaCentra "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Similarly, while the FLSA allows for the recovery of liquidated (i.e., double) damages, this can be avoided if the defendant shows that it "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

PharmaCentra contends that even if the time Plaintiffs spent starting up their computers and accessing the timekeeping system was compensable, it was not acting with reckless disregard and, instead, had reasonable grounds to believe it was paying Plaintiffs for all time worked. It would rely on, for example, its timekeeping policies

13

that prohibit off-the-clock work, the fact that Plaintiffs never complained or alerted PharmaCentra that it was taking more than a "de minimis" amount of time to startup their computers, and that it had no way to supervise Plaintiffs because they all worked remotely and therefore had to rely on the timecards Plaintiffs submitted. So even if Plaintiffs established liability, without also proving "willfulness" neither Maze nor Burt would recover anything because neither worked for PharmaCentra within the FLSA's standard two-year limitations. And Jones and Pinckney would only recover a very modest amount, having only worked 15 and 10 weeks, respectively, within this two-year period.[5] Further, if PharmaCentra establishes it acted in good faith with regard to these alleged violations, Plaintiffs' remaining damages would be halved.

Because the Parties hotly dispute whether Plaintiffs were properly paid under the FLSA, whether Defendants acted in good faith and thus whether liquidated damages are appropriate, and whether Defendants acted willfully the proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues. Put differently, given the PharmaCentra's defenses to liability as well as its statute of limitations and liquidated damages defenses, Plaintiffs' recovery of 34% of their best-day-in-court damages—which

---

[5] Ambos and Hunter would also be unable to recover for the 52 weeks they worked during this third year, substantially reducing their potential recovery.

include the FLSA's third year and liquidated damages—<u>plus</u> attorney's fees is inherently reasonable. Thus, factors four and five also weigh in favor of approving this settlement.

### 4. Counsel agree that the settlement is fair and reasonable.

Lastly, counsel here agree that the settlement is fair and reasonable. And all counsel here are experienced in litigating and settling FLSA matters. Lead counsel for Plaintiffs, Matthew Turner, is a senior shareholder who has been practicing for over twenty years and one of the primary focuses of his practice is FLSA collective actions.[6] Mr. Turner's colleague, associate Paulina Kennedy, focuses almost exclusively on employment law claims, including wage-and-hour disputes such as this.[7] Defense counsel, Craig Cleland[8] and Harry Rowland,[9] are both shareholders in their firm's Class Action practice group and almost exclusively defend complex wage-and-hour cases. Given's all counsel's substantial experience in litigating and settling wage-and-hour cases, this sixth and final factor also weighs in favor of approving these settlements.

---

[6] https://www.sommerspc.com/people/matthew-turner/
[7] https://www.sommerspc.com/people/paulina-kennedy/
[8] https://ogletree.com/people/a-craig-cleland/
[9] https://ogletree.com/people/harry-m-rowland-iii/

**D.    The attorneys' fees under the agreement are reasonable.**

The Parties' settlement also contains a component of attorneys' fees and costs. These fees and costs, which total $15,308.37, represent only a portion of Plaintiffs' counsels time spent on this matter, taking it from initial investigation and Complaint drafting, to evaluating and conferring on the arbitrability of the claims, through damages calculations and settlement negotiations.

The FLSA mandates that:

> The court in such action ***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (emphasis added); s*ee also Dionne v. Floormasters Enters.*, 667 F.3d 1199, 1205 (11th Cir. 2012) (citing *Kreager v. Solomon & Flanagan, P.A*., 775 F.2d 1541, 1542 (11th Cir. 1985) ("[S]ection 216(b) of the [FLSA] makes fee awards mandatory for *prevailing plaintiffs*.")).

The Eleventh Circuit has held that "attorney fees are an integral part of the merits of FLSA cases and part of the relief sought therein." *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987).

An enforceable judgment on the merits or a settlement agreement enforced through a court order establishes a party as a "prevailing party." *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop.*, Inc., 298 F.3d 1238, 1248 (11th Cir. 2002). Here, the Parties settled this case and have jointly requested settlement

approval. Thus, Plaintiffs are the "prevailing party" in this case, and they are entitled to the payment of their reasonable attorneys' fees and litigation expenses.

The FLSA does not require the Court to conduct "'an in depth analysis . . . unless the unreasonableness of such award is apparent from the face of the documents.'" *Freeman v. Trainingwheel Corp. LLC*, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020 (citing *King v. My Online Neighborhood, Inc.*, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007).

In FLSA actions, the Court relies on the lodestar method for determining the reasonableness of the fees sought. *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 Fed. Appx. 684 (11th Cir. 2011); P*erez v. Carey Int'l, Inc.*, 373 Fed. Appx. 907 (11th Cir. 2010); *Norman v. Alorica, Inc.,* 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012). Under the lodestar method, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate for similar legal services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1147, 1150 (11th Cir. 1993). While the "lodestar" method effectively replaced the balancing test in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 *Johnson* factors "might still be considered in terms of their influence on the lodestar amount." *Norman v. Hous. Auth. of the City of Montg.*, 836 F.2d 1292 (11th Cir. 1988). The factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the

skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

All of these factors are addressed in the declaration attached as **Exhibit 2**, from Plaintiffs' counsel Matthew Turner.  Based upon the challenges with the case in light of the enforceable arbitration agreements, the limited damages and the liability defenses, the settlement is more than fair and reasonable and the less than lodestar attorney fees and costs should be approved.

## III.    Conclusion

For the reasons set forth above, the Parties respectfully request that the Court approve the Parties' settlement and dismiss Plaintiffs' claims with prejudice.

Respectfully submitted this 5th day of September, 2025.

| | |
|---|---|
| *s/Matthew L. Turner* | *s/ Harry M. Rowland, III (w/consent)* |
| Matthew L. Turner (P48706) | Harry M. Rowland, III |
| Paulina R. Kennedy (P84790) | GA Bar No. 946192 |
| Sommers Schwartz, P.C. | A. Craig Cleland |
| One Towne Square, 17th Floor | GA Bar No. 129825 |
| Southfield, MI 78067 | Ogletree, Deakins, Nash, Smoak & |
| (248) 355-0300 | Stewart, P.C. |
| mturner@sommerspc.com | One Ninety One Peachtree Tower |
| pkennedy@sommerspc.com | 191 Peachtree St. NE, Suite 4800 |
| | Atlanta, GA 30303 |
| Andrew Weiner | Telephone:  404-881-1300 |
| Weiner & Sand LLC | Facsimile:   404-870-1732 |
| 800 Battery Avenue SE, Suite 100 | Craig.Cleland@ogletree.com |
| Atlanta, GA 30339 | Harry.Rowland@ogletree.com |
| aw@wsjustice.com | |
| | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | |

## CERTIFICATE OF SERVICE

I certify that on September 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Matthew L. Turner*
Matthew L. Turner